## NATHANIEL GODDARD *versus* JARED PRATT *et al*
## The Same *versus* The Same.

By a writing dated October 10, 1827, signed by T. and others, and by P. & Co., (a partnership engaged in the business of manufacturing iron) T. and others agree to take and pay for the one fourth part of the real estate formerly purchased by P. & Co. of their deceased partner, at 15,000 dollars, and to purchase the one fourth of the stock of the factory bought by P. & Co. belonging to the estate of their deceased partner, at the appraisal. Also to be interested or allowed one fourth part of all the profits arising from the manufacturing of iron, and in all profits or loss in the same since the appraisal of said estate the 20th of April, 1827, and to pay P. & Co. 2000 dollars profits on the same in six months from this date; and P. & Co. agree to get the said manufacturing establishment incorporated in January next; at which time all the property now belonging, or that may belong, to said concern, shall be put into shares, three fourths of which shall belong to P. & Co. and the other fourth to T. and others, when an exhibition is to be made to the satisfaction of all, and a copartnership formed. P. & Co. are at liberty to sell one third of their three fourths of the whole concern of real estate and stock to R. The services of P. & Co. shall commence from April 20, 1827. It was *held*, that this agreement, coupled with evidence of the payments stipulated to be made by T. and others, (and, *it-seems*, without such evidence,) constituted a partnership between the several parties to it, from the time of its execution.

Where the copartners in a firm obtained an act of incorporation as a manufacturing corporation, and transferred all their partnership property to the corporation, and the corporation made a by-law providing that the business should be carried on in the name of the partnership, it was *held*, that if the partnership was dissolved by these proceedings, yet that the members of it were liable as partners upon contracts subsequently made in the name of the partnership with third persons having no notice of the dissolution.

In an action against such partnership, evidence that there was a general reputation or report that the signature in the name of the firm was meant as the signature of the corporation, was *held* to be inadmissible.

In an action against several defendants as partners, the testimony of a witness that he had heard, or that it was the common reputation, that one of the defendants had ceased to be a partner, was *held* to be inadmissible.

Under *St.* 1833, *c.* 194, which provides that "at any time before issue joined, on a plea of non-joinder of a party as defendant in an action founded on debt or contract, the plaintiff may, on motion, be allowed to amend his writ and declaration, by inserting therein the name of any other person as defendant," the plaintiff may be allowed to insert the name of a person as defendant, although no plea of non-joinder shall have been filed.

ASSUMPSIT. In one of these actions the plaintiff declared on a promissory note, dated March 25, 1831, for $8100

payable to the plaintiff or order in ten months.   In the other, he declared upon three notes, two of them dated March 25, 1833, each for $8100, payable to the promisors' own order, one in twelve, the other in fourteen months, and the third, dated November 29, 1833, for $4856·48, payable to the plaintiff or order in six months.   All these notes were given for iron purchased of the plaintiff, and were signed " I. & J. Pratt & Co.," and the two which were payable to the prom-isors' own order, were indorsed " I. & J. Pratt & Co."

The defendants named in the writs were Isaac Pratt, Jared Pratt and Charles Wilbur, of Wareham, Benjamin Rodman, of New Bedford, Josiah L. James and Nathan Caswell, of the city of New York, and Benjamin L. Thompson, of Charlestown, and they, with one Newton Willey deceased, were alleged to be copartners, jointly negotiating in the name and style of I. & J. Pratt & Co.   There was no service on James and Caswell ; and the name of Rodman was struck out, the defendants not objecting.

Isaac and Jared Pratt, Wilbur, and Thompson, pleaded that they, with James, Caswell and Willey, never promised the plaintiff in manner &c.; and issue was joined on this plea.

The two actions were tried together, before *Putnam* J., upon the general issue thus pleaded.

The defendants' counsel moved that the names of Thomp-son and Willey should be struck out of the writ and declara-tion.   It was admitted, in regard to one of the actions, that they had been made parties, in virtue of *St.* 1833, *c.* 194, after the writ had been commenced against the other parties and returned.   The words of the statute are, that " at any time before issue joined, on a plea of non-joinder of a party as defendant in any action," &c., " the plaintiff may on mo-tion be allowed to amend his writ by inserting the name of any other person or persons as defendant or defendants," &c. The defendants' counsel contended, that the amendment is allowable only in cases where a plea in abatement for non-joinder has been made.   No such plea was made in the present case.   The judge rejected the motion.

It appeared that the signatures on the notes were made by Jared Pratt, who was one of the firm of I. & J. Pratt & Co.,

previous to February 1, 1828, when an act was passed, (*St*
1827, *c.* 28,) incorporating the Wareham Iron Company.

To maintain the issue on the part of the plaintiff, and to
prove that Thompson and Willey were copartners in the firm
of I. & J. Pratt & Co., the plaintiff offered in evidence the
following written contract:

" Memorandum of an agreement made by the subscribers
the 10th day of October, 1827, viz. Thompson & Willey,
of Boston, and Josiah L. James & Co., of the city of New
York, agree to take and pay for the one fourth part of the
real estate purchased by Messrs. I. and J. Pratt & Co. for-
merly of their deceased partner, say at $15,000. Also they
agree with the said I. & J. Pratt & Co., to purchase the one
fourth of the stock of said factory, bought by them, belonging
to the estate of their former partner, at the appraisal. Also
to be interested or allowed one fourth part of all the profits
arising from the manufacturing of iron and nails, and in all
profits or loss in the same since the appraisal of said estate,
the 20th day of April, 1827, and to pay the said Messrs.
Pratt & Co. two thousand dollars profits on the same in six
months from this date ; that is, one thousand dollars to be
paid by Thompson & Willey, and one thousand dollars by J.
L. James & Co. And the said I. & J. Pratt & Co. agree
to get the said manufacturing establishment incorporated in
January next : at which time all the property now belonging,
or that may belong, to said concern, shall be put into shares,
three fourths of which shall belong to them, and the other one
fourth to Thompson & Willey and J. L. James & Co., when
an exhibition is to be made to the satisfaction of all, and a
copartnership formed. Messrs. I. & J. Pratt & Co. are at
liberty to sell one fourth part of whole concern of real estate
and stock to John A. Parker, Esq. and Benjamin Rodman,
of New Bedford, that is, one third of their three fourths.
The services of Messrs. Pratt & Co. shall commence from
April 20, 1827."

This agreement was proved to have been subscribed by
Thompson & Willey, Josiah L. James & Co. and I. & J.
Pratt & Co. A writing was indorsed upon it, dated March
26, 1828, and signed by Josiah L. James & Co and Thomp-
son & Willey, which was as follows : —

' This contract is this day cancelled, except the two thousand dollars, which is still due to Isaac Pratt, Jare'l Pratt and Charles Wilbur, and which we promise to liquidate and settle on demand."

A letter from Thompson & Willey, dated October 27, 1827, to I. & J. Pratt & Co. was read, beginning thus: — " Yours of the 24th was duly received. We are pleased to hear that you get along so well with Mr. Spooner, &c. Your draft shall be duly honored," &c. The plaintiff called on Thompson to produce the letter of I. & J. Pratt & Co. of the 24th, referred to in the letter of Thompson & Willey, but he would not produce it. It was alleged by the plaintiff's counsel, and not denied nor admitted by the defendants' counsel, that the draft mentioned in the letter of the 27th was for the purchase money named in the agreement above recited, and that the same draft was paid before March 26, 1828. The payment of it was not denied.

The plaintiff read in evidence other letters of Thompson & Willey to I. & J. Pratt & Co., and called on Thompson to produce the letters of I. & J. Pratt & Co., making the other part of the correspondence, which Thompson refused to do. One of the letters read, dated July 3, 1827, states the terms of an offer made by the plaintiff to sell his iron to I. & J. Pratt & Co. ; another, dated September 28, 1827, says, " Your favor of the 26th came to hand this morning, informing us of your purchase of the one fourth of your establishment belonging to the deceased partner. We have anticipated being concerned with you and still wish to. Our Mr. Thompson left here &c. and calculated to be in New York on Monday next, when he will of course converse with Mr. James on the subject. I shall write him to-morrow and request him to visit you with Mr. James on his return, if they can, &c., if not, you will advise Mr. James of the purchase and your wishes, in season, before Mr. Thompson leaves there. It is my wish to carry the same into effect immediately, if agreeable to all ; " — another of November 13, 1827, acknowledges the receipt of 200 casks of nails, states that Thompson & Willey have sold a part of them ; says, " Our friend James & Co. wrote us a few days since, that the price

could be advanced in New York, if expedient; we referred him to you on the subject; we see no objections to getting all they would bring;" and states that Thompson & Willey have sent five laborers to I. & J. Pratt & Co.; — another, dated December 27, 1827, mentions the arrival of a parcel of nails and the non-arrival of another parcel, and says, " Our friend James said he would meet you at this city at such time the first of January as should be necessary, to carry into effect whatever should be thought best for the interest of the concern."

It appeared that the firm of I. & J. Pratt & Co. had existed and transacted business, before October 10, 1827, to a great extent; that Daniel Crane was one of the firm; that he died on April 20, 1827; and that his interest in the partnership property was conveyed by N. S. Spooner, as administrator and guardian, to I. & J. Pratt & Co.

The plaintiff's counsel contended, and requested the Court to instruct the jury, as matter of law, that the agreement of October 10th, coupled with the evidence in the case as to the payment of the purchase money, &c., and the letters in the case, if believed and established, was sufficient evidence to prove that Thompson and Willey became partners in the firm of I. & J. Pratt & Co. on the 10th of October, 1827; and the Court so instructed the jury.

On the part of the defendants it was contended, that if the agreement of the 10th of October constituted a partnership, and made Thompson and Willey copartners in the firm of I. & J. Pratt & Co., it was a limited partnership and ceased by its own limitation when the act of incorporation was obtained, in February 1828, long before the notes in suit were given. It appeared that the plaintiff did not come to the knowledge of the agreement until November 1834. The judge instructed the jury, that the partnership created by the agreement, did not, according to the true construction of the agreement, cease by its own limitation when the act of incorporation was obtained; but that if the agreement constituted a limited partnership, yet if the business was transacted in the partnership name after the act of incorporation, as it had been before, without notice of its supposed limitation,

the copartners would be liable until a dissolution and legal notice of such dissolution were proved.

The defendants offered in evidence the deed of N. S. Spooner, guardian of the heirs of Crane, dated October 29, 1827, for the consideration of $15,000, to Isaac Pratt, Jared Pratt and Charles Wilbur, of Crane's property in the firm of I. & J. Pratt & Co.

It was proved by the defendants, that an act of incorporation was obtained on February 1, 1828, by which Jared Pratt, Isaac Pratt, Wilbur, Thompson, Willey, James, Rodman and Caswell, their associates, successors and assigns, were made a corporation by the name of the Wareham Iron Company, with all the powers, privileges, duties and requirements of the statute of 1808, c. 65, which defines the general powers of manufacturing corporations.

They offered in evidence the doings of the corporation on the 25th and 26th of March, 1828, adopting the act of incorporation; also the advertisements in the Plymouth Memorial of March 8, 1828, and in the Patriot, and in the Daily Advertiser, published in Boston, in May 1828, giving notice of the organization of the Wareham Iron Company, and of their having adopted the provisions of the act, passed on March 10, 1828, entitled " An act in addition to the several acts respecting the general powers and duties of manufacturing corporations."

Also the deed from Isaac Pratt, Jared Pratt and Charles Wilbur, to the corporation, dated and acknowledged on the 26th of March, 1828, and recorded in the registry of deeds on the 15th of April, 1828. The consideration mentioned in this deed was 100,000 dollars, and the deed purports to convey all the right &c. of the grantors, in the real estate, (describing it,) and all the partnership goods, merchandise, stock in trade, debts, sum and sums of money, personal estate and effects whatsoever, due, owing or belonging to the grantors as partners in business under the firm of I. & J. Pratt & Co., the corporation assuming and paying all the debts and discharging all the obligations of the firm. The deed contains the following clauses : " The above provisions as they regard

Goddard
*v.*
Pratt.

the debts due to, and liability to pay debts due from the co-partnership aforesaid, to extend to, and not beyond the 20th day of April last inclusive." — " And the corporation aforesaid are to account with the said partnership for the amount of the appraisal of the personal estate of the original firm of I. & J. Pratt & Co. in April last, as taken by Bartlett Murdock, Elijah Willis and Gideon Nye, to which reference may be had."

The defendants also offered evidence to prove that Thompson and Willey had sold their shares in the corporation before the notes in suit were made. The plaintiff's counsel objected that this evidence was irrelevant, but it was admitted.

They also offered in evidence the by-laws of the corporation, made on March 26, 1828. The first article is, that " the business of the company shall be transacted under the firm of I. & J. Pratt & Co." The fourth article : " There shall be a treasurer, &c. He shall give and take notes and securities in the name and firm of I. & J. Pratt & Co., which shall be used and only used for and in behalf of the concerns of the corporation."

It appeared that all the defendants were present when the by-laws were adopted. And it was proved that the business was done in the name of I. & J. Pratt & Co. after the corporation was formed. There was no apparent change, and the paper of that signature was in the market, in the banks, in the hands of brokers, and otherwise in circulation, to a very large amount, up to the time of the failure of the corporation on January 27, 1834. The sign of I. & J. Pratt & Co. was continued on the store at the works in Wareham, for several years after the incorporation, until a new store was built, and then no sign was put up.

There was no other evidence of the dissolution of the firm of I. & J. Pratt & Co., excepting the supposed limitation of the firm, as before mentioned, the act of incorporation, and the acceptance of it, the notices in the newspapers, the deeds, the doings of the corporation as proved in the case, and the indorsement on the agreement. The by-laws were not made public by any publication in the newspapers or otherwise, nor made known to the plaintiff.

The defendants contended, that the evidence was sufficient to prove that the copartnership of I. & J. Pratt & Co. had been dissolved. The jury were instructed that it was not sufficient to prove such dissolution.

The defendants requested the Court to instruct the jury : —

1. That the memorandum of October 10, 1827, did not constitute the parties who signed it copartners, and that the defendants were not by reason of it liable to the plaintiff. But the judge instructed the jury, that the agreement, coupled with the evidence of the payment of the alleged purchase money, and the evidence contained in the letters, if established to their satisfaction, did constitute those who subscribed it, copartners at that time.

2. That if the memorandum did constitute the parties to it copartners, the copartnership was, by the terms of the memorandum, a limited one, and that it terminated when the act of incorporation was obtained ; so that after that time, the parties to it were not copartners, but corporators, and that these actions should have been brought against the corporation. But the jury were instructed otherwise, as before stated.

3. That if the jury are satisfied that the plaintiff never dealt with the firm of I. & J. Pratt & Co. till after the act of incorporation of February 1828, and that he never knew of the existence of such a firm until after that time, it was incumbent on him to know with whom he dealt and that he was dealing with a corporation. But the judge considered that the supposition, that the plaintiff did not know of the existence of the firm until after February 1828, was disproved by the letters of Thompson & Willey to I. & J. Pratt & Co. written before that time ; and the jury were instructed, that the plaintiff seeing the name of a firm or private partnership upon the paper, without any reference to a corporation, it was not for the plaintiff to know, but it was for the defendants to prove, that the plaintiff was dealing with a corporation and not with copartners ; and that the plaintiff had a right to recover against all who were copartners when the notes were made, unless the defendants should prove that he knew that he was dealing with a corporation, and not with copartners, notwith-

standing he had never dealt with the firm of I. & J. Pratt &
Co. until after the act of incorporation.

4. That if the jury are satisfied from all the evidence, that
the plaintiff knew that he was dealing with a corporation at
the time when he sold the iron and took the notes, he cannot
prevail in this suit against any of the defendants, as his action
should have been brought against the corporation, and not
against individuals as copartners.   The judge instructed the
jury accordingly, and the whole evidence upon that point was
left to them ; and they found a verdict for the plaintiff, there-
by declaring that the plaintiff did not know, when he sold the
iron and took the notes, that he was dealing with a corporation
and not with individuals as copartners.

5. That if the memorandum constituted a copartnership,
the memorandum was cancelled by the writing upon the back
of it and was of no further effect, provided it was not known
to the plaintiff till after the act of incorporation.   But the
judge instructed the jury, that such writing was of itself no
dissolution of the agreement of copartnership, but evidence
that certain things had been accomplished, which were by the
terms of it to be done, leaving the rest to be performed.

7. That if the jury find that Thompson and Willey were
not corporators, but copartners with the other defendants, at
the time of their dissolving their connexion with them, still
they are not liable in this action, provided the plaintiff knew
that they had so dissolved their connexion at the time when he
took the notes, whatever might have been the plaintiff's means
of knowledge.   The judge assented to this as a general
proposition, and illustrated it to the jury by saying, that if a
neighbour, of good reputation, who knew such fact, had given
information of it to the plaintiff, it should be considered as
express notice, and not mere conjecture.

It was stated by the counsel for the defendants, that the
corporation failed on January 27, 1834, and transferred their
property to Thompson and Willey.   The plaintiff, in the
course of the trial, called for the assignment, but it was not
produced.

The defendants proposed to inquire of witnesses, whether
there was a general reputation or report on the exchange, that

by the signature of I. & J. Pratt & Co. the corporation of the <span style="float:right">Goddard<br>v.<br>Pratt.</span> Wareham Iron Company was meant. This was objected to by the plaintiff, and not permitted; but the evidence was confined to the knowledge of the witnesses who were called on that point, and who had discounted or dealt in the paper of that signature.

The defendants desired to inquire of their witnesses, whether they had heard that Thompson and Willey had left the concern, and whether that was the common reputation; which was objected to by the plaintiff and not allowed.

The defendants moved for a new trial.

*B. Sumner* and *S. D. Ward*, for the defendants. To the *March 26th.* point, that if the memorandum constituted a copartnership, it was limited to a particular event, the obtaining an act of incorporation, and when that was obtained the memorandum was at an end, they cited *Dickinson* v. *Valpy*, 10 Barn. & Cressw. 128 ; *Bourne* v. *Freeth*, 9 Barn. & Cressw. 632 ; that the evidence of a common reputation that Thompson and Willey had left the concern, whether a partnership or a corporation, and that the partnership was dissolved, was admissible, *Irby* v. *Vining*, 2 M'Cord, 379 ; *Dolman* v. *Orchard*, 2 Carr. & Payne, 104 ; *Kelley* v. *Hurlburt*, 5 Cowen, 534 ; 13 Petersdorff's Abr. 209, note ; and that a corporation may make use of more than one name, *Minot* v. *Curtis*, 7 Mass. R. 441.

*J. Mason* and *Bartlett*, for the plaintiff. As to the notice which is required upon the dissolution of a copartnership, they cited Collyer on Partn. (Phillips's edit.) 310, 311 ; *Leeson* v. *Holt*, 1 Stark. Rep. 186 ; 11 East, 144, note ; *Graves* v. *Merry*, 6 Cowen, 711 ; *Bristol* v. *Sprague*, 8 Wendell, 423 ; 3 Stark. Ev. (Metcalf's edit.) 1078, 1080.

Shaw C. J. delivered the opinion of the Court. This *April 8th* is an action of great magnitude and importance, as well on account of the number and variety of questions presented by it, as the amount of property involved in it.

The position assumed by the defendants is, that the defendant Thompson, with his deceased partner Willey, were not at any time members and copartners of the house and firm known by the name of I. & J. Pratt & Co., and that the instruction of the Court, upon the legal effect and operation

of the memorandum mentioned in the report, under the cir cumstances proved, should have been that they were not partners in that firm.   Upon a revision of the question, the Court are of opinion, that by the terms of the memorandum of October 10, 1827, which Thompson & Willey, and Messrs James & Co. of New York, agreed to take and pay for one fourth of the real estate at the price of $15,000, and also to purchase one fourth of the stock of the factory, at the appraisal, with the other stipulations in that instrument, coupled with evidence of the payment of the money, did constitute a partnership, commencing at least as early as the payment of the money ; and as the stock is designated as that of the firm of I. & J. Pratt & Co., as it is shown that the concern had, for a length of time, been conducted and carried on in that name, and as no new name or style was adopted, the partnership business of the company, as thus constituted by this memorandum, was conducted in the same name, and that name and firm designated all the persons who thus became copartners.

Whether the agreement alone, without the payment of money, would have constituted them copartners or not, either as between themselves, or between them and third persons, it is not necessary to decide ; but undoubtedly there are many cases, where by an agreement to share profit and loss, without any payment, or by an agreement to pay instead of present payment, the parties will become partners.   But in the present case, it was found that the amount stipulated was paid, and the opinion expressed by the Court to the jury, upon the effect of this instrument, was connected with the consideration that the money had been paid.   As part of the argument turned upon this direction and its correctness, it may be as well to consider it.   After the memorandum had been introduced, stipulating that the new purchasers, Thompson & Willey and James & Co., would take and pay for the one fourth of the real and personal estate of the firm, which formerly belonged to the deceased partner Crane, but no time was stipulated, within which such payment should be made, the presumption was that the payments were to be made forthwith, or within reasonable time ; or taken in connexion with

other proof in the case, that the real estate was to be obtained
by a deed from N. S. Spooner, the administrator and guardi-
an, it is to be presumed, that as to the real estate at least, the
payment was to be made, as soon as the deed could be ob-
tained.   It was further shown, that -in the course of about
twenty days afterwards, and about the time the deed was
actually executed by Spooner to Pratt & Co., a letter was
addressed by Thompson & Willey to I. & J. Pratt & Co.
in answer to one of theirs dated the 24th of October, express-
ing satisfaction at the prospect of getting along with Spooner,
and saying, your draft shall be duly honored.   If there was
any reason for delaying payment for the real estate to be
obtained by a deed from Spooner, there seemed to be none
for delaying payment for the personal property, which was to
be taken at an appraisal, made many months before, and
especially as the purchaser's interest in the profits, was to
commence at a period anterior to the date of the memoran-
dum.   Taking the terms of the memorandum, then, it was to
be presumed, that the payments were to be made soon.   The
letter of Thompson & Willey of the 27th of October, ac-
knowledges the receipt of that of Pratt & Co. of the 24th,
and by promising that their draft shall be duly honored, the
presumption is very strong, that this refers to some proposition
or request in the letter of Pratt & Co. announcing their inten-
tion to draw bills ; and the presumption is equally strong, that
that letter, if produced, would show on what account such
bills were to be drawn.   The plaintiff contended that these
bills were for these very payments ; the defendants did not
admit or deny this, and upon notice given, refused, without
any excuse, to produce this letter.   There was no evidence
offered by the defendants to show any payments afterwards,
and yet when organized under the act of incorporation it is
not pretended that the new partners, Thompson & Willey
and James & Co., had not paid for this quarter part and
received certificates of stock accordingly.   Under these cir-
cumstances the question was whether these payments had been
made, and the judge instructed the jury, that the agreement,
coupled with evidence of payment, was sufficient to prove
that Thompson & Willey became partners in the firm on

Goddard
*v.*
Pratt.

Goddard
*v.*
Pratt.

October 10, 1827. This is not the precise form of the instruction, but is, we think, its effect. The same is stated afterwards, in reference to the first request of the defendants, for special instructions in point of law. The judge instructed the jury, that the agreement, coupled with the payment of the purchase money, and the evidence contained in the letters aforesaid, if established to their satisfaction, did constitute those who subscribed it, copartners at that time.

The counsel contended, that the words " if established to their satisfaction," do not apply to the fact of payment, but the mere authenticity of the letters, but we think this is not the natural or proper construction. This is shown, we think, by reference to the point in controversy. The defendants asked the opinion of the Court as to the construction and legal effect of the terms of the memorandum ; this they had a right to ask, and this it was proper for the Court to give. The construction and legal effect of every written instrument, is matter of law. But such construction may be modified and controlled, by the existence of facts, to be proved by evidence *aliunde.* So it appears the judge thought it was here. Tne construction therefore adopted, and given to the jury, was, that this instrument, connected with the fact of payment, if established by the proof, did constitute the defendants partners. The fact, therefore, we think, was left to the jury, upon the evidence, and not merely the authenticity and genuineness of the letters, and the jury were informed that if this fact was established to their satisfaction, by the letters and evidence submitted to them, then the agreement did constitute the defendants partners.

The question therefore recurs, upon the correctness of this construction of the memorandum. It appears to us that this was an entire and complete agreement for an immediate and present copartnership, between the parties. The defendants, Thompson & Willey, together with James & Co., agree, without limitation of time, to purchase a quarter part of the real estate and one quarter part of the stock of the factory, at an appraisal, then before made. The price therefore was fixed and definite. It was also stipulated that they were to be interested, in one fourth part of the profits, and subject to the

like share of the losses, immediately from and after the agreement. These are not precisely the terms of the agreement, but a slight consideration of all the terms of the agreement, and the circumstances under which it was made, will clearly show that this was its legal effect. It is manifest from the circumstances and the terms of the contract, that the existing firm of I. & J. Pratt & Co., consisting of Isaac and Jared Pratt and Charles Wilbur, considered themselves as entitled, either in their legal right as surviving partners, or in virtue of some executory contract with the representatives of their deceased partner, Daniel Crane, to sell and dispose of the quarter part, both of the real and personal estate, which he had owned in the concern. It is obvious, from the reference in the memorandum, that an appraisal of the whole stock had been made some months preceding, having reference to Crane's death on the 20th of April preceding, which the parties assumed as the basis of their new agreement. The parties no doubt considered, that as to all the profits acquired after the death of Crane, and as to the value of the good-will of the establishment, if it may be so called, or the privilege of coming into an already formed and active concern, with the benefit of its correspondence and established reputation and run of custom, these belonged exclusively to the survivors, and these were made the subject of a separate stipulation. But the effect was to make the new purchasers sharers in profit and loss, from the moment of the agreement. In fact it gave them an interest in profits already earned, and made them subject to losses already sustained. But as to past profits, it may be considered as a purchase, and as to past profits and losses, it may be considered as a private agreement between the parties, as to the mode in which the account should be taken, and could not by relation render them liable to persons already become creditors to the firm. *Vere v. Ashby*, 10 Barn. & Cressw. 288. The question in all such cases is, with whom was the contract made ; and the fixed rule of law gives the answer, that all those who have entered into copartnership with the ostensible dealer or firm, and who by agreeing to share in the profits, are in legal contemplation deemed to be partners, are the parties bound. As to all

business and all contracts, future when this agreement was made, the defendants Thompson & Willey and James & Co., by the agreement of partnership, and the agreement to share in the profits of the business carried on in the name of I. & J. Pratt & Co., did authorize that firm to bind them, and they became parties in all such contracts. The suggestion, that this was an executory agreement to become partners at a future time, and when they should so become partners the defendants were to share in the profits of the business done in the intermediate time, is forced and untenable.

It may be added in passing, that this agreement to share in the profits of the business to commence at a period anterior to the date of the agreement, is very strong evidence to the point, that the purchase money was to be paid forthwith. The two thousand dollars was a fixed sum to be paid at a fixed time, for profits then already earned, and was not to be enlarged or varied with reference to any time of payment of the purchase money ; and therefore if the new purchasers were not to pay the amount of their purchase money forthwith, they would be at once receiving a full share of the profits of the business, requiring a large capital, without advancing any capital. If it had been put upon that ground, at the trial, it is a very grave question, whether the agreement did not, *de facto*, constitute all the defendants partners, without other proof of payment, on the ground that if payment were necessary, the agreement itself implies that the money was paid or other security given, or that the agreement itself amounts to a contract for payment, which was accepted by the venders as satisfactory.

This view of the subject seems decisive. An agreement to take and pay for a fixed share, in a partnership, with a view to carry on the business, and an agreement to share the profit and loss of such concern, is a contract of partnership ; and an agreement to share profits from the moment of making the agreement, shows that it was executed and not executory.

But other views of different parts of the contract, lead to the same result. The stipulation at the close, that the services of the active partners shall commence from April 20, 1827, preceding, no doubt means that compensation for those

services should be computed from that time. Any other construction would be insensible. Why should this be, if they were to continue working for themselves and not for the new concern, until some future time, when some new arrangement would be made ?

The stipulation, that Messrs. I. & J. Pratt & Co. might be at liberty to sell another quarter of the stock and concern, to two gentlemen named, leads directly to the same conclusions. If they were partners, no new partners could be introduced without their consent. But upon the hypothesis, that this agreement was not to go into effect until the act of incorporation should be obtained, no such consent would be necessary, and this claim would be wholly nugatory, because upon obtaining the act of incorporation, the shares would become transferable personal property, and each stockholder might transfer his shares to any person, in whole or in part, at his pleasure. The stipulation, that I. & J. Pratt & Co. should get the manufacturing establishment incorporated in the ensuing January, is a distinct, independent, executory agreement on their part, and it has neither the form nor the force of a condition precedent, or of a limitation of time, at which the agreement to participate in the profits, the effective agreement of copartnership, should take effect. The further stipulation, that at that time an exhibition was to be made to the satisfaction of all, and a copartnership formed, as to the first clause of it, is nothing more than a common stipulation, on the part of acting and managing partners, to render an account at a fixed time ; and as to the latter, it is obvious, and indeed was so conceded at the argument, that "copartnership" was not used in its legal sense, but rather intended, that after the act of incorporation should be obtained, a connexion or company should be formed under it, and such connexion or company must necessarily be a corporation, and not a copartnership in its ordinary sense.

Besides, every agreement and stipulation must be construed according to the subject matter. It is not absolutely in the power of any individuals, at their will and pleasure, to obtain an act of incorporation, however confidently they may be warranted from the past history of legislation, to expect one

on asking for it ; and therefore the stipulation of I. & J. Pratt & Co.. must be understood as an agreement to apply for an act of incorporation, and use their honest endeavors to obtain it.   But if the carrying into effect of this agreement, had been intended to be suspended upon the condition of procuring an act of incorporation, we think the whole basis, frame and structure of this agreement would have been different.   The Court therefore all concur in the opinion expressed by the judge who tried the cause, that this agreement, under the circumstances, constituted the parties to it copartners, from the time it was made.

The next question for our consideration is, whether the partnership thus formed, had been dissolved and notice of it so given, before the contracts were entered into with the plaintiff upon which this action is brought, as to exempt the defendant Thompson from his liability.

Some other questions were indeed made, but we think the decision must depend upon that above stated.

It was suggested that the new purchasers were dormant partners, and so it was not necessary to have given notice of dissolution to exempt them ; but we think it impossible to sustain this position upon the terms of the agreement, and if it depended upon other facts, it was a question for the jury, and the verdict is decisive.   By the agreement, Thompson & Willey of Boston, and James & Co. of New York, purchase into a trading and manufacturing concern, at a distant place, then already known, and extensively known, by a partnership designation ; that partnership designation expressed the names of two of the active and managing partners, and indicated the participation of others, as partners, by the significant abbreviation, " & Co."   This was a plain indication to all customers, and persons dealing with them, that others were concerned ; there is nothing in the agreement intimating an intent to keep the interest of these new partners secret, or to prevent the acting partners from disclosing this fact, and thereby giving the additional strength and firmness to their establishment which this fact would do.   It is a well settled rule of law, that a person is not to be deemed a dormant partner, because his name does not appear in the firm and part-

nership style, which they choose to adopt, but where other partners are indicated by the word " company," where the interest of partners not named, is generally known, the partners actually constituting the company are to be deemed partners, in the same manner as if their names were expressed. But where it is intended to be shown that, in point of fact, a partner was strictly a dormant partner, and his interest not in fact generally known, in order to excuse notice of dissolution, it is a question of fact for the jury. This point, though slightly alluded to at the trial, was not reserved, nor the evidence in relation to it reported, and so far therefore as it was relied upon at all at the trial, it must be deemed to have been settled by the verdict, that the partnership was not a dormant one.

It was also objected, that when this company became incorporated, and organized under their act of incorporation, and adopted a by-law, agreeing among themselves and instructing their agents, to transact all their business in the name of I. & J. Pratt & Co., that name thenceforth bound the corporation only, and not the individuals, formerly and at the time of such organization, composing the firm known by that name.

This case and this by-law disclose a very extraordinary state of facts, so unprecedented and novel, that it seems extremely difficult to apply to these transactions any of the known rules of law, or to ascertain the legal rights, duties and obligations of those connected or dealing with this concern.

It is extremely difficult to know what they themselves designed and intended by this regulation. That they intended to renounce their corporate name altogether, and assume that of I. & J. Pratt & Co. for all purposes, cannot for a moment be imagined, because it would be entirely inconsistent with the act of incorporation authorizing them to form a corporation by a particular name, in which the evidence of its identity mainly consists, because the name of individuals, as a corporate name, is entirely unprecedented and could only tend to mislead. Test this. Suppose the deed in the case had been made to I. & J. Pratt & Co., can it be imagined that the Wareham Iron Co. would take under it? Certain

corporations may indeed have more than one name, or rather more than one designation, and perhaps, by force of the doctrine of estoppel, a corporation might be bound by other names than their own ; but this would found no rule of construction against those claiming adversely to them.

But no doubt it was the intention of the corporation, in adopting this by-law, to make their ordinary contracts, and carry on their mercantile business, in the name of this firm, and to this the members of the firm did not object.

But what contract, did they suppose, such a transaction formed, and with whom ? With the corporation, as having in fact made the contract, through their agents, in a name designated by them, and of which they had received the fruits ? With the firm, as being a party whose name alone was used, and that name embracing the real personal names of the managing agents, and in fact, making contracts in their own names ? Would it have a double aspect, binding the corporation as the real contractors, and the managing individuals composing the firm, as sureties or collateral contractors ? Or would it operate as the contract of the one or the other of these parties, according as the person contracting with them, or taking their negotiable securities, should or should not have notice of the precise state of the facts, so that it should operate as the contract of the corporation, as to those persons who should know of the existence of this by-law, and as the contract of the firm in regard to those who had no such notice ?

These queries indicate the extreme difficulty of putting a legal construction upon those acts of the parties, adopting their own hypothesis, that upon the organization of this corporation, the former partnership was *de facto* dissolved, or subsisted only for the purpose of settling and closing an account with the corporation itself, pursuant to the terms of the deed ; that they adopted the name of I. & J. Pratt & Co. as a convenient business name, not intending to hold out the credit of this firm, as a known and already established house. The strong probability is, that the members of the corporation, in adopting this extraordinary mode of transacting their corporate business, did not foresee or consider the great in-

conveniences to themselves and others dealing with them, producing in effect most of the ill consequences of misrepresentation; and if it were otherwise, if it could be supposed that such consequences were anticipated and designed, the course would have been extremely reprehensible and obnoxious to a charge more severe, than that of unintentionally misleading those who should deal with them.

But after considering the subject in these various views, and perceiving that in some other aspects of the cause, they might have presented questions of great doubt and difficulty, we are all of opinion, that, in the actual condition in which this cause is now placed before the Court, it is not necessary to decide them, and that this cause in fact depends upon a few plain and well established principles. We think the case is brought back to the question, first above stated, whether there was in fact a dissolution of this copartnership, formed, commenced and continued, for some time at least, under the firm of I. & J. Pratt & Co., and if so, whether such actual or constructive notice was given of it, as by law is requisite, to exonerate the partners from the obligation of contracts made by the acting partners in the name of the firm.

These two facts are so intimately blended together, as they bear upon this question, that is to say, the fact of dissolution by the partners, as among themselves, and notice of it, either general to the community, or particular to the plaintiff, that there seems to be little use in considering them separately. The fact of forming a corporation under an act obtained for that purpose, and transferring the whole of the real estate and the partnership stock and property to such corporation, standing alone, would be strong evidence of an intention of the partners, as between themselves, to dissolve the partnership, and form an association of a different legal character; but the regulation adopted at the same time to transact their business in the name of the already existing firm, made, at least with the tacit consent of the members of that firm, the business to be conducted and carried on by the agency of the acting and managing members, whose names appeared in the firm, indicated strongly an intention to continue the partnership, as between themselves and the community. But as

already stated, it seems unnecessary to decide this question by itself, because it is well settled, that whatever may be the intention and the agreement of partners, to effect a dissolution as between themselves, if notice of that fact is not given, it cannot be legally deemed to be dissolved, as regards others.

If then, the partnership was established, if it was determined that this was not strictly a dormant partnership, then supposing a dissolution effected as between the partners, it was a question of fact for the jury, whether actual or constructive notice of such dissolution had been given, so as to exempt the members from responsibility for acts done and contracts made in the name of the firm by the late acting and managing partners.

This question was left to the jury, and after carefully looking through the report and examining the several exceptions, to the admissions and rejections of evidence, and the instructions of the Court, we are satisfied that they were sufficiently favorable to the defendant.

Several considerations were relied on as matter of law, as conclusive evidence of such dissolution, such as the supposed limitation in the agreement itself, the act of incorporation, the acceptance of it, the notice of the act having been accepted, and the acts and doings of the corporation. As to the limitation in the agreement itself, it is rather to be found in implication, than in terms, but supposing it intended to be limited to the time of obtaining the act of incorporation, and organizing under it, it could only affect the rights of the parties as between themselves, and not itself being public had no tendency to give notice to others. Besides, as the jury were distinctly and correctly informed in another part of the case, whatever may be the intention and even the stipulations of partners, in their agreement or articles of copartnership, as to the limits of its duration, if after the expiration of such term, they still continue to act together as partners as to third parties, they must be deemed to be partners.

The act of incorporation, and the doings under it, are of the same effect, being accompanied with no notice that this firm was dissolved, or that all the property and stock of this firm was transferred to this corporation, or that the name of

the firm was adopted and continued for the mere convenience of the corporation; the acceptance of the charter and the organization of the company had no tendency to give notice to the mercantile community, of the dissolution of the firm. The memorandum indorsed on the agreement is of the same character. If a partnership was actually formed, pursuant to the agreement, cancelling the agreement under which it was formed, would not determine it, if they continued to act as partners; and a private agreement between some of the partners, even if it indicated a more decided intention to dissolve the partnership as between themselves, could not have that effect as against third persons, having no notice of it.

Without going minutely into the particular exceptions, which are somewhat numerous and some of them rather unintelligible, it appears that it was fully left to the jury to decide, upon the whole evidence, whether the plaintiff knew that he was dealing with a corporation, and not with a firm or copartnership composed of individuals, whether he knew that the copartnership was dissolved, or that Thompson & Willey had withdrawn from it, and the jury by their verdict for the plaintiff negatived the fact of such notice. We are also of opinion, that the instruction of the judge, that if Thompson & Willey sold out their shares in the corporation, this did not necessarily constitute a dissolution of the copartnership, was unexceptionable.

One other question was discussed at the argument, as to the admissibility of evidence. The defendants' counsel proposed to inquire of witnesses, whether there was a general reputation or report, that by the signature of I. & J. Pratt & Co. the corporation of the Wareham Iron Company was meant; this was objected to and not admitted, but the evidence was confined to the knowledge of the witnesses, who had discounted or dealt in the paper of that signature, and the whole evidence upon this point was left to the jury. They also desired to inquire of their witnesses, if they had heard that Thompson & Willey had left the concern, and if such was the common reputation. The Court are of opinion that these decisions were right. In regard to the first, supposing a partnership proved, the question could have no other effect

Goddard
*v.*
Pratt.

than to show notice of a dissolution and of the adoption of the partnership name, by common reputation, and that of those who had had no dealings with the parties, or who had had no occasion to make particular inquiries, with a view to taking their paper. We are satisfied that this decision was sufficiently favorable to the defendants, and if the question had been made on the other side, whether the belief and understanding of those who had dealt with them, founded upon report and hearsay, was admissible, it would have been one of more difficulty. The general rule is, that to preclude a party in such case, it must be shown that he has actual notice of the fact ; or that notice has been published as the act and declaration of the partners themselves, which shall operate as constructive notice to all persons.

One other question arises, in this action, of great practical importance. In one of the cases now before the Court, the plaintiff was permitted on motion, to summon in a new defendant, after the action was entered in this Court. If not warranted by the statute, it is clear that the case is not within the jurisdiction of the Court. This statute, 1833, c. 194, and the corresponding act authorizing the striking out of defendants, or rendering judgment in favor of some and against others in actions founded on joint contract, St. 1834, c. 189, do certainly make a bold innovation upon the principles and practice of the common law ; it is therefore necessary to examine with great care, and endeavour as far as possible to give them a correct and liberal construction.

An ingenious argument was raised upon the construction of this statute, founded principally on the punctuation. Upon this construction, new defendants could be summoned in only on a plea of non-joinder of parties in abatement. This would render it entirely optional with the defendant whether such motion should be made or not, and would not render the act beneficial to the plaintiff, to the extent which seems intended. If no plea in abatement is filed, no motion can be made to summon in defendants. But it is not safe to depend on punctuation, and it is necessary to look carefully at the probable intent of the legislature. The construction is certainly not free from obscurity. It was certainly a mischief, that where

a plea in abatement for non-joinder of a party, before the statute, was filed, if the plaintiff could not safely traverse it, his action must abate because he could not at common law amend by making new parties. If the legislature had thought fit to remedy this specific mischief, and nothing more, it would have been well ; but we think the intent would have been more definitely expressed. It is a general rule in the construction of remedial statutes, that the remedy shall be held to be coextensive with the mischief, if this can be clearly discerned, and if it can be done without violence to the language.

Upon the best consideration we have been able to give to the statute, we think the legislature had in view a mischief of deeper and wider extent. In case of an abatement, the plaintiff loses only his costs and the benefit of his attachment, and may commence his action anew. The manifest design of the legislature was, to enable a party to avoid the payment of costs, and save the benefit of his attachment, against parties already served with process where the only defect was that there were other parties also liable. We think therefore the true construction is, that in all cases founded on debt or contract, unless where an issue has been joined on a plea of non-joinder in abatement, the plaintiff may, on motion, summon in new defendants. This construction seems best adapted to attain the general purposes intended by the statute, and may be adopted without violence to the language of the statute. This case was, upon this construction, within the statute, and the new defendant rightfully summoned.

*Judgment on the verdict for the plaintiff.*